

Filing # 28924150 E-Filed 06/25/2015 10:20:02 AM

IN THE CIRCUIT COURT IN THE FOURTH
JUDICIAL CIRCUIT IN AND FOR DUVAL
COUNTY, FLORIDA

PATRICIA MINCEY, by and through KELLY SIMS,
her attorney-in-fact,

        Plaintiff,

v.

CASE NO: 15CA000377 Div CV-E

AMERICAN HONDA MOTOR CO., INC., a foreign
corporation; HONDA OF AMERICA MFG., INC., a
foreign corporation; TAKATA CORPORATION, a
foreign corporation; TK HOLDINGS, INC., a foreign
corporation; and DUVAL MOTORS OF
JACKSONVILLE, LLC, f/k/a DUVAL HONDA, LLC,
a Florida limited liability company,

        Defendants.

_____/

## AMENDED COMPLAINT

Plaintiff PATRICIA MINCEY, by and through KELLY SIMS, her attorney-in-fact, hereby

sues Defendants AMERICAN HONDA MOTOR CO., INC., a foreign corporation; HONDA OF

AMERICA MFG., INC., a foreign corporation; TAKATA CORPORATION, a foreign

corporation; TK HOLDINGS, INC., a foreign corporation; and DUVAL MOTORS OF

JACKSONVILLE, LLC, f/k/a DUVAL HONDA, LLC, a Florida limited liability company, and

states as follows:

### JURISDICTION, PARTIES, AND VENUE

1. This is an action for damages in excess of fifteen thousand dollars, exclusive of

attorneys' fees, interest, and costs.

2.  At all times material hereto, Plaintiff Patricia Mincey was and is a resident of Duval County, Florida.

3.  At all times material hereto, Plaintiff's attorney-in-fact, Kelly Sims, was and is a resident of Duval County, Florida.

4.  At all times material hereto, Kelly Sims was and is the biological daughter of Plaintiff Patricia Mincey. Plaintiff Mincey, due to the severity of her injuries, has granted Kelly Sims durable power of attorney, which includes the power to bring the present lawsuit on Mrs. Mincey's behalf as her attorney-in-fact.

5.  Defendant American Honda Motor Co., Inc. ("American Honda") is a California corporation and a subsidiary of Honda Motor Company, Ltd. ("Honda Motor"), headquartered in Torrance, California with its principal place of business at 1919 Torrance Blvd., Torrance, California 90501. American Honda designs, manufactures, assembles, tests, markets, promotes, advertises, distributes and sells Honda Motor and/or Honda brand cars, trucks, and sport utility vehicles in the United States, including the subject vehicle. American Honda has been identified by Honda Motor as the "Manufacturer's Agent" in its National Highway Traffic Safety Administration (hereinafter "NHTSA") communications related to this motor vehicle safety issue involving exploding, unreasonably dangerous Takata airbags in Honda brand vehicles and has been directly involved in the safety investigation and determinations made as to the motor vehicle safety issues arising from the defective and unreasonably dangerous condition of certain Honda brand vehicles it makes, including the subject vehicle. Additionally, American Honda is responsible for the distribution of such Honda brand vehicles in the United States, Puerto Rico

and the U.S. Virgin Islands. Moreover, American Honda has actively been involved in the developing knowledge of this motor vehicle safety issue by Honda entities over the last decade, and the actions and/or inactions of same relating to this public safety hazard. Finally, to the extent the United States Department of Transportation ("DOT") by and through the Secretary of Transportation has delegated authority to the Chief Counsel of NHTSA by a "Special Order" dated November 5, 2014, to investigate this safety issue, it is American Honda who has been ordered to provide responses to "demands [for] certain information and documents" provided and "signed under oath" as to its newly initiated "PE14-016 Air Bag Inflator Rupture" investigation.

6.   Defendant American Honda is subject to the jurisdiction of this Court because it operates, conducts, engages in, or carries on a business or business venture in the state of Florida; has an office or agency in the state of Florida; caused injury to persons or property within the state of Florida arising out of an act or omission it committed outside the state; manufactures, processes, or services products or materials that are used in the state of Florida in the ordinary course of commerce, trade, or use; or engages in substantial and not isolated activity within the state of Florida.

7.   Defendant Honda of America, Mfg., Inc. ("Honda Mfg.") is an Ohio corporation and subsidiary of Honda Motor, headquartered in Marysville, Ohio with its principal place of business at 24000 Honda Pkwy, Marysville, Ohio 43040. Honda Mfg. designs, manufactures, assembles, tests, markets, promotes, advertises, distributes and sells Honda Motor and/or Honda brand cars, trucks, and sport utility vehicles in the United States, including the subject vehicle.

Mincey v. Honda
Case No.: 15CA000377 Div CV-E
Amended Complaint
Page 4

Honda Mfg. has been directly involved in the safety investigation and determinations made as to the motor vehicle safety issues arising from the defective and unreasonably dangerous condition of certain Honda brand vehicles it makes, including the subject vehicle. Moreover, Honda Mfg. has actively been involved in the developing knowledge of this motor vehicle safety issue held by Honda entities over the last decade, and their actions and/or inactions relating to this public safety hazard.

8. Defendant Honda Mfg. is subject to the jurisdiction of this Court because it operates, conducts, engages in, or carries on a business or business venture in the state of Florida; has an office or agency in the state of Florida; caused injury to persons or property within the state of Florida arising out of an act or omission it committed outside the state; manufactures, processes, or services products or materials that are used in the state of Florida in the ordinary course of commerce, trade, or use; or engages in substantial and not isolated activity within the state of Florida.

9. Defendants American Honda and Honda Mfg. are collectively referred to as "Honda" or "Honda Defendants."

10. Defendant Takata Corporation ("Takata Corp.") is a foreign for-profit corporation organized and existing under the laws of Japan with its principal place of business in Tokyo, Japan. Takata Corp. is a specialized supplier of automotive safety systems, that designs, manufactures, assembles, tests, markets, distributes, and sells vehicle restraint systems to various Original Equipment Manufacturers ("OEM's"), including Honda, in the United States and abroad, including specifically the airbag incorporated and used by Honda in its airbag safety

system in the subject vehicle. Takata Corp. is a vertically-integrated company and manufactures component parts in its own facilities, and then distributes them.

11. Defendant Takata Corp. is subject to the jurisdiction of this Court because it operates, conducts, engages in, or carries on a business or business venture in the state of Florida; has an office or agency in the state of Florida; caused injury to persons or property within the state of Florida arising out of an act or omission it committed outside the state; manufactures, processes, or services products or materials that are used in the state of Florida in the ordinary course of commerce, trade, or use; or engages in substantial and not isolated activity within the state of Florida.

12. Defendant TK Holdings Inc. ("TK Holdings") is a Delaware corporation and subsidiary and/or operational unit of Takata Corp., headquartered in Auburn Hills, Michigan, with its principal place of business at 2500 Takata Drive, Auburn Hills, Michigan 48326. TK Holdings is in the business of designing, manufacturing, assembling, testing, promoting, advertising, distributing, and selling vehicle restraint systems to various OEM's, including Honda, including the airbag incorporated and used by Honda in its airbag safety system in the subject vehicle. Additionally, TK Holdings has also been identified in various materials as manufacturing the "inflators" in the frontal airbag systems that are rupturing or exploding with unreasonably dangerous, excessive concussive force, and which in many instances have injured vehicle occupants with concussive impacts, as well as the "propellant" or explosive charge used within the inflator itself. TK Holdings also is involved in the distribution of such airbag systems to OEM's, including Honda. Moreover, to the extent the United States DOT by and through the



Secretary of Transportation has delegated authority to the Chief Counsel of NHTSA by a "Special Order" dated October 30, 2014, to investigate this safety issue, it is TK Holdings that has been ordered to provide responses to "demands [for] certain information and documents" provided and "signed under oath" as to its newly initiated "PE14-016 Air Bag Inflator Rupture" investigation.

13. Defendant TK Holdings is subject to the jurisdiction of this Court because it operates, conducts, engages in, or carries on a business or business venture in the state of Florida; has an office or agency in the state of Florida; caused injury to persons or property within the state of Florida arising out of an act or omission it committed outside the state; manufactures, processes, or services products or materials that are used in the state of Florida in the ordinary course of commerce, trade, or use; or engages in substantial and not isolated activity within the state of Florida.

14. Defendants Takata Corp. and TK Holdings are hereinafter collectively referred to as "Takata" or "Takata Defendants." Takata is the manufacturer of the airbag in Plaintiff's vehicle, which was recalled subsequent to the accident that forms the subject matter of this litigation.

15. Honda vehicles sold in the United States contain airbags manufactured by Takata. NHTSA has recalled millions of Honda vehicles for having faulty Takata airbags, including the vehicle involved in the accident that forms the subject matter of this litigation. Upon information and belief, the Honda Defendants are all directly responsible for Plaintiff's injuries and damages, which were caused by the defective air bag safety system in the subject vehicle and caused Plaintiff catastrophic injuries during the accident.

Mincey v. Honda
Case No.: 15CA000377 Div CV-E
Amended Complaint
Page 7

16. Defendant Duval Motors of Jacksonville, LLC, formerly known as Duval Honda, LLC, is a Florida limited liability company with its principal place of business located at 1325 Cassat Ave, Jacksonville, Florida and its registered agent located at 701 Riverside Park Place, Suite 310, Jacksonville, Florida. Upon information and belief, the members of Duval Motors of Jacksonville are Florida citizens. Through its employees, agents, and servants, acting within the course and scope of their employment, Defendant Duval Motors inspected, examined, reviewed, repaired, and/or performed maintenance on the subject vehicle prior to the date of the subject accident.

17. Venue is appropriate in Duval County, Florida, because the incident that gave rise to Plaintiff's injuries occurred in Duval County, Florida.

18. All conditions precedent to the bringing of this action have been met or waived.

## GENERAL ALLEGATIONS

19. On or about June 15, 2014, Plaintiff Patricia Mincey was the owner, properly seat belted, and fully-restrained driver of a 2001 Honda Civic.

20. At or about that time, she was involved in a minor motor vehicle collision that occurred at or near the intersection of Rampart Road and Collins Road in Jacksonville, Duval County, Florida.

21. During the course of that collision, Plaintiff Mincey's occupant protection safety system, including her driver's side airbag system, failed to perform in a reasonably safe manner.

22. Her vehicle contained an airbag system manufactured by the Takata Defendants.

*Cohen Milstein Sellers & Toll, PLLC*
*2925 PGA Boulevard, Suite 200, Palm Beach Gardens, FL 33410*
*Telephone: (561) 515-1400   Facsimile (561) 515-1401*

23. That airbag system, instead of protecting Plaintiff Mincey from injury in the event of a collision, deployed late and violently exploded due to excessive pressurization and deployed with such excessive force (hereinafter referred to as the "subject defect") that it rendered Plaintiff Mincey a quadriplegic.

24. The subject defect resulted in an airbag safety system that failed to prevent Plaintiff's injuries, and, in fact, increased or enhanced her injuries above and beyond those that she would have ordinarily incurred in the accident without the airbag system deploying.

25. On June 19, 2014, four days after Plaintiff Mincey was rendered a quadriplegic by the subject defect, Honda launched recall 14V351, which recalled Plaintiff's vehicle due to the subject defect.

26. In the event that Florida's statute of repose applies to the action, the period of repose had not run prior to Plaintiff filing this action as the period was tolled for the time during which any Defendant "through its officers, directors, partners, or managing agents had actual knowledge that the product as defective in the manner alleged by the claimant and took affirmative steps to conceal the defect." § 95.031(2)(d), Fla. Stat.

27. Beginning well prior to the vehicle's date of sale, and continuing for several years thereafter, the Honda and Takata Defendants, through their officers, directors, partners, or managing agents, had actual knowledge that the subject vehicle was defective in the manner alleged in this Complaint, and took affirmative steps to conceal such defects, for over a decade before Plaintiff's accident.

28. The specific acts of concealment, and the substantial factual and legal basis for Plaintiffs' allegations of same, include but are not limited to the following events specified below:

  a. The Honda and Takata Defendants have had actual knowledge of the nature, scope, and risks posed by the unreasonably dangerous and defective Takata airbags for at least a decade.

  b. Upon information and belief, the Takata Defendants first learned of its exploding airbag problem in 2001 when a Takata airbag exploded in a 2001 Isuzu. That explosion led to a recall due to the subject defect later that year.

  c. The Honda Defendants first learned of the exploding airbag problem in 2004. According to Honda, "[t]he first known rupture of a Takata airbag occurred in Alabama" in 2004 and involved a 2002 Honda Accord. *See Takata Saw and Hid Risks in Airbags in 2004, Former Workers Say,* New York Times, Nov. 6, 2014.

  d. Upon information and belief, the Takata Defendants did a series of "secret tests" after the 2004 incident in attempt to figure out the cause of the subject defect. *See id.*

  e. As reported by The New York Times, "two former employees" of Takata, "one of whom was a senior member of its testing lab", "secretly conducted testing on 50 airbags it retrieved from scrapyards" after a Takata airbag "ruptured and spewed metal debris at a driver in Alabama" in 2004. *See id.* During the secret tests "[t]he steel inflators in two of the airbags cracked…, a condition that can lead to a rupture, the former employees said." *See id.* According to the article, the Takata

employees were startled by the results, and "engineers began designing possible fixes in preparation for a recall". *See id.* "But instead of alerting federal safety regulators to the possible danger, Takata executives discounted the results and ordered the lab technicians to delete the testing data from their computers and dispose of the airbag inflators in the trash". *See id.* The Takata Defendants' " secret tests, which have not been previously disclosed, were performed after normal work hours and on weekends and holidays during summer 2004 at Takata's American headquarters in Auburn Hills, MI, the former employees said", and, "were supervised by Al Bernat, then Takata's vice president for engineering". *See id.*

f.  Since at least 2004, both the Honda Defendants and the Takata Defendants have had a growing and continuing awareness of the subject defect through consumer complaints, claims, and lawsuits, and of the grave safety dangers associated with the exploding airbags.

g.  Upon information and belief, in an effort to conceal the subject defect from the public, including consumers, such as Plaintiff Mincey, the Honda Defendants and Takata Defendants systematically implemented a strategy to "generally settle quickly" claims and/or lawsuits alleging that an exploding Takata airbag caused property damage, a personal injury, or a wrongful death." *See Warning: This Air Bag May Contain Shrapnel*, Businessweek, Oct. 30, 2014.

h. The Honda and Takata Defendants' decisions to conceal the subject defect were made by upper management, their legal departments, and their outside counsel and/or agents and were made in an effort to hide the subject defect from the public, including consumers, such as Plaintiff Mincey, and regulatory agencies, such as the National Highway Traffic Safety Administration ("NHTSA"),

i. In a further effort to conceal the subject defect, the Honda and Takata Defendants also decided to not report and/or underreport and/or omit material information concerning the subject defect to NHTSA despite being required to do so pursuant to the Transportation Recall Enhancement, Accountability, and Documentation (TREAD) Act. *See* 49 C.F.R. 579.21(b).

j. Several regulations required the Honda and Takata Defendants to fully and promptly report the subject defect to regulatory agencies, such as NHTSA. Such examples include, but are not limited to, the following:

   i. NHTSA requires manufacturers to:

   > Report each incident in which one or more persons are injured in the United States that is identified in a claim or notice, if the product was identified with minimal specificity and, as to notices, it was alleged or proved that the injury was caused by a possible defect in the product. For these manufacturers, the report would be combined with the reporting of incidents involving fatalities and include the same types of information.

*Reporting of Information and Documents About Potential Defects Retention of Records That Could Indicate Defects*, 67 Fed. Reg. 45822-01, *at* 45840-41 (July 10, 2002) (to be codified at 45 C.F.R. pt. 579).



ii. Further, 49 U.S.C. § 30166(m)(3)(A)(i)-(ii) requires manufacturers to report to NHTSA on "claims submitted to the manufacturer for serious injuries (including death) . . . from alleged defects in a motor vehicle or in motor vehicle equipment," and on "customer satisfaction campaigns, consumer advisories, recalls, or other activity involving the repair or replacement of motor vehicles or items of motor vehicle equipment."

iii. The TREAD Act requires the Honda and Takata Defendants to provide Early Warning Reporting ("EWR") information. EWR is one of NHTSA's essential tools in protecting the public from defective products.

k. Upon information and belief, despite those regulations, and in an effort to conceal the subject defect from the public, consumers, such as Plaintiff Mincey, and regulatory agencies, such as NHTSA, the Honda and Takata Defendants violated their reporting requirements.

## A. Specific Examples of Non-Reporting and/or Underreporting by the Honda and Takata Defendants

29. Upon information and belief, in 2007, the Honda and Takata Defendants were aware of at least three additional Takata airbag ruptures due to the subject defect that occurred that year.

30. Upon information and belief, in 2008, the Honda and Takata Defendants were aware of at least one more exploding Takata airbag incident.

31. In an effort to conceal the subject defect from the public, consumers, such as Plaintiff Mincey, and regulatory agencies, such as NHTSA, the Honda and Takata Defendants did not report, delayed in reporting, and/or underreported the 2004 and 2007 incidents to NHTSA. According to a report by The New York Times entitled *"Air Bag Flaw, Long Known to Honda and Takata, Led to Recalls"*, dated September 11, 2014, "In none of those four instances of ruptured airbags . . . did Honda go beyond the standard form and separately alert safety regulators to the most critical detail: that the airbag posed an explosion risk."

32. Upon information and belief, in early 2009, the Honda and Takata Defendants became aware of at least three more exploding airbag incidents in Honda vehicles that occurred due to the subject defect, including one woman who was seriously injured and two other women who died.

33. Upon information and belief, in an effort to conceal the subject defect from the public, consumers, such as Plaintiff Mincey, and regulatory agencies, such as NHTSA, the Honda and Takata Defendants did not report, delayed in reporting and/or underreported the subject defect and/or incidents to NHTSA.

34. On April 27, 2009, Jennifer Griffin was severely injured while driving a 2001 Honda vehicle due to the subject defect. According to reports, the airbag in the vehicle exploded and sent a two-inch piece of shrapnel flying into Ms. Griffin's neck. Although Ms. Griffin survived, when highway troopers found her, blood was gushing from the gash in her neck.

35. The April 27, 2009, incident involved a serious injury caused by a possible defect and the Honda and Taktata Defendants were required to report the incident to NHTSA. However, in an

effort to conceal the subject defect from the public, consumers, such as Plaintiff Mincey, and NHTSA, the Honda and Takata Defendants did not report and/or underreported and/or delayed in reporting the subject defect and/or this incident to NHTSA.

36. On May 27, 2009, Ashley Parham was killed while driving a 2001 Honda Accord due to the subject defect. According to reports, Ms. Parham's car bumped into another car in a parking lot resulting in the airbag deploying and exploding. Metal shrapnel sliced opened her carotid artery and she bled to death while her brother observed from the backseat of the vehicle.

37. The May 27, 2009, incident involved a serious injury caused by a possible defect and the Honda and Takata Defendants were required to report this incident to the NHSTA. However, in an effort to conceal the subject defect from the public, consumers, such as Plaintiff Mincey, and NHTSA, the Honda and Takata Defendants did not report and/or underreported and/or delayed in reporting the subject defect and/or this incident to NHTSA.

38. On December 24, 2009, Gurjit Rathore was killed while driving a 2001 Honda Accord due to the subject defect. Ms. Rathore's neck was severed by metal shrapnel from the airbag inflator manufactured by the Takata Defendants.

39. The December 24, 2009, incident involved a serious injury caused by a possible defect and the Honda and Takata Defendants were required to report this incident to the NHSTA. However, in an effort to conceal the subject defect from the public, consumers, such as Plaintiff Mincey, and NHTSA, the Honda and Takata Defendants did not report and/or underreported and/or delayed in reporting the subject defect and/or this incident to NHTSA.

Mincey v. Honda
Case No.: 15CA000377 Div CV-E
Amended Complaint
Page 16

40. On April 2, 2010, Kristy Williams was severely injured while driving a 2001 Honda Civic due to the subject defect. Ms. Williams' carotid artery was severed by shards of metal propelled from an airbag manufactured by the Takata Defendants. Her loss of blood led to several strokes, a seizure, and a speech disorder.

41. The April 2, 2010, incident involved a serious injury caused by a possible defect and the Honda and Takata Defendants were required to report this incident to the NHSTA. However, in an effort to conceal the subject defect from the public, consumers, such as Plaintiff Mincey, and NHTSA, the Honda and Takata Defendants did not report and/or underreported and/or delayed in reporting the subject defect and/or this incident to NHTSA.

42. On November 8, 2010, Suetania Emmanuel was severely injured while driving a 2002 Honda Civic due to the subject defect. Ms. Emmanuel's face and throat were split open by shards of metal propelled from an airbag manufactured by the Defendants.

43. The November 8, 2010, incident involved a serious injury caused by a possible defect and the Honda and Takata Defendants were required to report this incident to the NHSTA. However, in an effort to conceal the subject defect from the public, consumers, such as Plaintiff Mincey, and NHTSA the Honda and Takata Defendants did not report and/or underreported and/or delayed in reporting the subject defect and/or this incident to NHTSA.

44. On March 8, 2012, Sharonda Blowe was severely injured while driving a 2001 Honda Accord due to the subject defect. Ms. Blowe suffered lacerations to the head and accompanying skull fractures when she was struck by shards of metal propelled from an airbag manufactured by the Defendants.

*Cohen Milstein Sellers & Toll, PLLC*
*2925 PGA Boulevard, Suite 200, Palm Beach Gardens, FL 33410*
*Telephone: (561) 515-1400  Facsimile (561) 515-1401*

45. The March 8, 2012, incident involved a serious injury caused by a possible defect and the Honda and Takata Defendants were required to report this incident to the NHSTA. However, in an effort to conceal the subject defect from the public, consumers, such as Plaintiff Mincey, and NHTSA, the Honda and Takata Defendants did not report and/or underreported and/or delayed in reporting the subject defect and/or this incident to NHTSA

46. On August 6, 2013, Joseph C. Nasworthy was severely injured while driving a 2005 Honda Civic due to the subject defect. Mr. Nasworthy suffered severe eye and nose lacerations when he was struck by shards of metal propelled from an airbag manufactured by the Defendants.

47. The August 6, 2013, incident involved a serious injury caused by a possible defect and the Honda and Takata Defendants were required to report this incident to the NHSTA. However, in an effort to conceal the subject defect from the public, consumers, such as Plaintiff Mincey, and NHTSA, the Honda and Takata Defendants did not report and/or underreported and/or delayed in reporting the subject defect and/or this incident to NHTSA

48. On or about September 1, 2013, Stephanie Erdman was severely injured while driving a 2002 Honda Civic due to the subject defect. Ms. Erdman was struck in the eye by shards of metal propelled from an airbag manufactured by the Defendants.

49. The September 1, 2013, incident involved a serious injury caused by a possible defect and the Honda and Takata Defendants were required to report this incident to the NHSTA. However, in an effort to conceal the subject defect from the public, consumers, such as Plaintiff

Mincey, and NHTSA, the Honda and Takata Defendants did not report and/or underreported and/or delayed in reporting the subject defect and/or this incident to NHTSA

50. On September 3, 2013, Hai Ming Xu (Devin Xu) was killed while driving a 2002 Acura TL sedan, a Honda vehicle, due to the subject defect. The Los Angeles County Coroner's Department report cited "apparent facial trauma due to foreign object inside air bag," explaining further, "[t]he strength of the impact was high enough as to produce a sudden, strong movement of the brain inside the skull which produced the bleeding."

51. The September 3, 2013, incident involved a serious injury caused by a possible defect and the Honda and Takata Defendants were required to report this incident to the NHSTA. However, in an effort to conceal the subject defect from the public, consumers, such as Plaintiff Mincey, and NHTSA, the Honda and Takata Defendants did not report and/or underreported and/or delayed in reporting the subject defect and/or this incident to NHTSA.

52. On October 12, 2013, Brandi Owens was severely injured due to the subject defect while driving a non-Honda vehicle equipped with an airbag manufactured by Takata. Ms. Owens was involved in a low-speed accident which resulted in the driver's side airbag exploding with such force that it detached from the steering wheel and struck her in the face, causing her left eye to rupture.

53. The October 12, 2013, incident involved a serious injury caused by a possible defect and the Takata Defendants were required to report this incident to the NHSTA. However, in an effort to conceal the subject defect from the public, consumers, such as Plaintiff Mincey, and

NHTSA, the Takata Defendants did not report and/or underreported and/or delayed in reporting the subject defect and/or this incident to NHTSA.

54. On March 14, 2014, Susan Cosgrove was killed while driving another non-Honda vehicle equipped with an airbag manufactured by Takata due to the subject defect. Ms. Cosgrove was involved in a low-speed accident which resulted in injuries leading to her death.

55. The March 14, 2014, incident involved a serious injury caused by a possible defect and the Takata Defendants were required to report this incident to the NHSTA. However, in an effort to conceal the subject defect from the public, consumers, such as Plaintiff Patricia Mincey, and NHTSA, the Takata Defendants did not report and/or underreported and/or delayed in reporting the subject defect and/or this incident to NHTSA.

56. On May 29, 2014, Corey Burdick was severely injured while driving a 2001 Honda Civic due to the subject defect. Mr. Burdick was struck in the eye by shards of metal propelled from an airbag manufactured by the Takata Defendants.

57. The May 29, 2014, incident involved a serious injury caused by a possible defect and the Honda and Takata Defendants were required to report this incident to the NHSTA. However, in an effort to conceal the subject defect from the public, consumers, such as Plaintiff Mincey, and NHTSA, the Honda and Takata Defendants did not report and/or underreported and/or delayed in reporting the subject defect and/or this incident to NHTSA.

58. On or about July 7, 2014, Claribel Nunez was severely injured while driving a 2001 Honda Civic due to the subject defect. Ms. Nunez was injured when shards of metal from the airbag were propelled into her forehead.

Mincey v. Honda
Case No.: 15CA000377 Div CV-E
Amended Complaint
Page 20

59. The July 7, 2014, incident involved a serious injury caused by a possible defect and the Honda and Takata Defendants were required to report this incident to the NHSTA. However, in an effort to conceal the subject defect from the public, consumers, such as Plaintiff Mincey, and NHTSA, the Honda and Takata Defendants did not report and/or underreported and/or delayed in reporting the subject defect and/or this incident to NHTSA.

60. Upon information and belief, in addition to the above, there also appear to be many more incidents that remain unreported and/or under reported by the Honda and Takata Defendants.

61. On October 24, 2014, CNN reported, in part, on the Center for Auto Safety's investigation into the exploding airbag problem, that "Three Honda drivers and one driver of an Acura, which is also made by Honda, have been killed by the exploding airbags, according to the Center for Auto Safety. Dozens more have suffered serious injuries, and two drivers who were blinded in at least one eye."

62. On October 30, 2014, Bloomberg reported, "Honda, Takata's largest customer, has so far confirmed two deaths and 30 injuries from the possible defect and is investigating two additional deaths in Florida and California." *Warning: This Air Bag May Contain Shrapnel*, Bloomberg, Oct. 30, 2014.

63. On November 6, 2014, the New York Times reported that "Complaints received by regulators about various automakers blame Takata airbags for at least 139 injuries". *Takata Saw and Hid Risks in Airbags in 2004, Former Workers Say*, New York Times, Nov. 6, 2014.

64. On or about November 3, 2014, NHTSA started to fully investigate the Honda and Takata Defendants' reporting failures. Specifically, the United States Department of

Transportation ("DOT"), by and through the Secretary of Transportation, has delegated authority to the Chief Counsel of NHTSA by a "Special Order" dated November 3, 2014, to "open [] an Audit Query, AQ14-004, to investigate the extent and scope of certain EWR reporting failures by Honda, the reason(s) for such failures and the steps being taken by Honda to assure full compliance with TREAD reporting requirements."

65. On November 6, 2014, The New York Times reported on the Honda and Takata Defendants' concealment of the subject defect. The New York Times reported that "Japanese air bag manufacturer Takata knew ten years ago that its airbags could explode with deadly force, but covered up the results of secret tests". *Takata Saw and Hid Risks in Airbags in 2004, Former Workers Say*, New York Times, Nov. 6, 2014. The New York Times further reported that "two former employees" of Takata, "one of whom was a senior member of its testing lab", "secretly conducted testing on 50 airbags it retrieved from scrapyards" after a Takata airbag "ruptured and spewed metal debris at a driver in Alabama" in 2004. *Id.* During the secret tests "[t]he steel inflators in two of the airbags cracked…, a condition that can lead to a rupture, the former employees said." *Id.*

66. On November 6, 2014, The New York Times further reported that the Takata employees were startled by the results, and "engineers began designing possible fixes in preparation for a recall". *Id.* "But instead of alerting federal safety regulators to the possible danger, Takata executives discounted the results and ordered the lab technicians to delete the testing data from their computers and dispose of the airbag inflators in the trash". *Id.* "The secret tests, which have not been previously disclosed, were performed after normal work hours and on weekends

and holidays during summer 2004 at Takata's American headquarters in Auburn Hills, Mich., the former employees said", and, "were supervised by Al Bernat, then Takata's vice president for engineering". *Id.*

### B. The Recall History of the Subject Vehicle

67. The Honda and Takata Defendants' concealment of the subject defect is further evidenced by how the Defendants have handled recalls due to the subject defect.

68. From 2008 to 2014, the Defendants' story of the root cause of the subject defect changed as the Honda and Takata Defendants continually attempted to conceal the subject defect, its magnitude, and its cause in an effort to save money, time, and protect its business interests. However, because the subject defect continued to appear, despite Defendants' efforts at concealment, the Defendants reluctantly and incrementally expanded its recalls. After several investigations by the National Highway Transportation Institute, lawsuits, and other inquiries, the true magnitude of the subject defect and the Defendants' concealment was and continues to be revealed.

69. In 2007, the Honda Defendants notified the Takata Defendants of three airbag explosion incidents that occurred because of the subject defect. These incidents triggered an internal investigation by the Takata Defendants.

70. Thereafter, the Honda Defendants filed a standard report with U.S. safety regulators on the 2004 and 2007 airbag incidents. However, the Honda Defendants did not issue any recalls and never informed safety regulators of the most critical detail of these incidents: that the airbags posed a substantial risk of serious injury or death when deployed.

71. On or about November 11, 2008, in Recall 08V593, the Honda Defendants began a very limited recall for the subject defect. At that time, the Takata and Honda Defendants stated that the defect was that "the driver's airbag inflator could produce excessive internal pressure." This recall occurred over four years after the first airbag explosive force or punch out incident in a Honda car. However, the Takata and Honda Defendants concealed the magnitude of the subject defect by stating that the number of potentially affected vehicles was limited to 3,940. At that time, the Honda Defendants told the National Highway Transportation Safety Administration (NHTSA) that the information relating to the defect was provided by the Takata Defendants at a meeting that occurred on October 2, 2008.

72. The Takata and Honda Defendants, however, concealed the magnitude of the defect, including that Plaintiff's vehicle had the subject defect, because Plaintiff's vehicle, despite suffering from the defect described in the preceding paragraph, was not recalled in Recall 08V593.

73. In or about June of 2009, the Takata Defendants provided a follow up report to the Honda Defendants on their November 2008 analysis, stating that issues related to propellant production appeared to have caused the improper inflator performance.

74. In or about June of 2009, in Recall 09V259, the Honda Defendants expanded the recall for the subject defect to include 440,000 vehicles. In that recall, the Takata and Honda Defendants changed their story as to the cause of the subject defect, claiming it was related to the process of pressing the propellant into wafers that were later installed into the inflator modules. However, the subject defect was still described as "the driver's airbag inflator could produce

excessive internal pressure." Again, the Takata and Honda Defendants concealed the magnitude of the defect by claiming the affected units exhibited properties that were limited to one production process involving one of several high-precision compression presses that were used to form the propellant into wafers.

75. The Takata and Honda Defendants, however, continued to conceal the magnitude of the defect.

76. On or about September 17, 2009, Defendant Duval Motors, as an authorized Honda dealer, replaced the driver's airbag inflator in the subject vehicle.

77. In or about August 2009, the NHTSA Recall Management Division sent Honda an information request to explain why it did not include 2009 Recall vehicles in the 2008 Recall, and "to evaluate the timeliness of [Honda's] recent defect decision."

78. The NHTSA also wanted to know "the difference between the driver's airbag inflators in those vehicles from the inflators in the 09V-259 vehicles and explain how this distinction, or any other between the two sets of vehicles, convinced [the Honda Defendants] at the time that it did not need to include the latter set in the 08V-593 recall population."

79. The NHTSA Recall Management Division further requested that Honda provide complaints, lawsuits, warranty claims, and field reports, along with an explanation of the "unusual deployments" and Honda's investigative efforts.

80. In Honda's September 2009 reply to the NHTSA, the automaker said that its information about the "unusual deployments" came from the Takata Defendants: "We

understood the causal factors to be related to airbag propellant due to handling of the propellant during airbag inflator module assembly."

81. The Honda Defendants also reported, based on information from the Takata Defendants, the problem with the airbags was isolated to the "production of the airbag propellant prior to assembly of the inflators." Specifically, the cause was "related to the process of pressing the propellant into wafers that were later installed into the inflator modules," and limited to "one production process" involving one high-precision compression press that was used to form the propellant into wafers, the automaker told the NHTSA.

82. The Honda Defendants also disclosed to NHTSA that it had fielded nine complaints and one lawsuit related to the 2008 and 2009 Recalls. They also, for the first time, told NHTSA about the 2004 incident involving an "unusual deployment" of the vehicle's airbag, but claimed they "only recently were reminded of this incident," and that, until recently, the Honda Defendants "had not associated it with the [2008 Recall] campaign."

83. In their communications with NHTSA, the Takata Defendants continually gave misleading or incorrect information about the airbags they manufactured that were part of the recalls.

84. On or about November 20, 2009, NHTSA requested information from the Takata Defendants as part of its ongoing investigation into the airbag inflators that triggered the 2009 Recall.

85. The Takata Defendants submitted a partial response to NHTSA on or about December 23, 2009 ("Partial Response") and then a full response on or about February

19, 2010 ("Full Response"). Both responses provided vague and misleading information about the seriousness of the problem.

86. In both responses, the Takata Defendants asserted that there were no substantive design differences between the inflators in the airbags at issue in the two recalls. However, in the Full Response, they admit that there were, in fact, differences in the production processes between the lots.

87. In both responses, the Takata Defendants asserted that the defects only existed in specific lots manufactured between certain dates. They claimed that the inflators involved in the 2008 Recall were manufactured between October 29, 2000 and December 1, 2000. They also claimed that inflators involved in the 2009 Recall were manufactured between August 23, 2000 and February 25, 2001.

88. The Takata Defendants did not provide the dates the inflators were shipped, as NHTSA requested, because, as they admitted, their records did not have that information. Instead, they gave just the manufacturing dates.

89. In both the Partial Response to NHTSA on or about December 23, 2009, and the Full Response on or about February 19, 2010, the Takata Defendants stated that: "Takata has not provided any airbag inflators that are the same or substantially similar to the inflators in vehicles covered by the recalls in 2008 and 2009 to any customers other than Honda. The physical characteristics of the inflator housing used in the Honda vehicles subject to these recalls are unique to Honda." This statement would prove to be untrue.

90. In their Full Response, the Takata Defendants asserted that the defect identified in the 2009 Recall was the result of a single compression press, although Takata recommended to Honda that a small number of other vehicles with propellant processed on a different press be recalled as well.

91. In their Full Response, the Takata Defendants asserted that the defective parts were all manufactured on a particular press (the "Stokes press") in a single manufacturing plant. They further asserted that while they did manufacture 2,400 inflators using the same process as the defective inflators, the design was different and "[t]herefore Takata is convinced that the inflators sold [redacted] contain no safety-related defect."

92. The Takata Defendants wrote in their Full Response that they "believed- [redacted]-that expanding the recall to include all vehicles equipped with inflators manufactured with Stokes propellant produced through and including February 28, 2001 would capture all inflators with tablets that had a risk of producing overly energetic combustion. This recommendation, as well as the analysis that supported it, was presented to Honda on June 12 2009."

93. Both the Honda and Takata Defendants represented to the public and the NHTSA that the total number of affected vehicles was quite small.

94. Because the Honda and Takata Defendants concealed the true extent of the subject defect, NHTSA's Office of Defect Investigation ("ODI") closed RQ 0-9004. The ODI accepted the Honda and Takata Defendants' explanations that in 2008 the wrong root cause was identified and that the Honda Defendants relied on the Takata Defendants' representations in making recall decisions.

95. In or about February 2010, in Recall 10V041, the Honda Defendants expanded the recall for the subject defect again – this time to include approximately 379,000 vehicles. The Honda and Takata Defendants described the defect as "excessive internal pressure" in the "driver's side airbag inflator." However, their explanation for the airbag defects changed yet again. They explained that there are two different manufacturing processes utilized in the preparation of an airbag propellant. While one process was within specification, the other was not. The expanded recall reached those vehicles employing airbags that had utilized manufacturing processes not within specification.

96. The Honda and Takata Defendants, again, however, concealed the magnitude of the defect, including that Plaintiff's vehicle had the subject defect, because Plaintiff's vehicle, despite suffering from the defect described in the preceding paragraph, was not recalled in Recall 10V041.

97. In or about April 2011, in Recall 11V260, the Honda Defendants expanded the recall to include all 833,277 vehicles that had been previously recalled for the subject defect.

98. The Honda and Takata Defendants stated they could not identify 2,430 bad replacement service part driver's side airbag modules that might have been installed in models that were covered in prior recall expansions.

99. On or about May 17, 2011, Honda issued a service bulletin to its dealers, instructing them that a "manufacturing error can produce over-pressurization of some replacement driver's (front) airbag inflators during airbag deployment." Honda instructed its dealers to inspect vehicles falling within a certain model and VIN number range, which included the model and VIN

number of the subject vehicle, to determine if the vehicle had received a defective replacement airbag inflator, in which case the dealer was to install a new driver's airbag inflator kit and return the removed inflator to Honda within 48 hours of the repair.

100.    On or about July 18, 2011, Honda issued a notice to its dealers, service management, and personnel advising them of procedures that "MUST be followed when a suspect vehicle arrives at your dealership," which included checking the vehicle's VIN number to determine whether it fell within the range specified in the May 2011 service bulletin.

101.    Honda also notified its dealers that they could not sell used 2001-2002 Honda Civics until they first inspected the vehicles and, if needed, repaired the vehicles by replacing any defective driver's airbag inflators.

102.    In or about December 2011, the Honda Defendants informed NHTSA that it was going to expand the recall again to include additional vehicles that may have had suspect driver's airbag modules installed either as original equipment or as a service part, because the automaker found out about another "energetic driver's airbag deployment in which the inflator ruptured," outside of the VIN range in previous recalls, and the inflator module itself was outside of "the suspect range previously identified by the supplier." In other words, more vehicles than the Honda and Takata Defendants had previously disclosed suffered from the subject defect.

103.    The recall was expanded to an additional 272,779 vehicles that had the subject defect from manufacture and an additional 603,421 vehicles that may have had replacement parts that suffered from the subject defect. The Honda and Takata Defendants described the defect as the driver's airbag "inflator could produce excessive internal pressure." Honda directed its

dealers to inspect vehicles for defective air bag inflators and, where identified, to replace the defective inflators.

104.     By 2013, it became clear that the defective airbag issue was far more widespread than the Takata or Honda Defendants initially reported to the NHTSA.

105.     According to Honda's 2013 Defect and Noncompliance Report, an exploding airbag in Puerto Rico in October 2011 prompted Honda to ask permission from the NHTSA to collect "healthy" airbag modules to see if "abnormal combustion was possible." The Honda Defendants found that even their so-called "healthy" airbags could abnormally deploy in certain conditions.

106.     On or about February 8, 2013, NHTSA and the Honda Defendants met to discuss the "ongoing investigation" into Honda's defective Takata airbags. The Honda Defendants stated:

> A recreation of propellant production using the same methods as were used during 2001-2002 production periods indicated that it was possible for propellant produced during 2001-2002 to be manufactured out of specification without the manufacturing processes correctly identifying and removing the out of specification propellant. Separately, Honda was informed by the supplier of another potential concern related to airbag inflator production that could affect the performance of these airbag modules.

107.     In or about April 2013, in Recall 13V132, the Honda Defendants expanded the recall to defective airbag inflators installed in the passenger side of 561,422 Honda Civics, describing the defect as "the passenger's (frontal) airbag inflator could produce excessive internal pressure."

Mincey v. Honda
Case No.: 15CA000377 Div CV-E
Amended Complaint
Page 31

108.     On or about April 11, 2013, the Takata Defendants filed a Defect

Information Report titled "Certain Airbag Inflators Used as Original Equipment" ("Takata

DIR"). In that report, the Takata Defendants identified the defective airbags as follows:

> Certain airbag inflators installed in frontal passenger-side airbag
> modules equipped with propellant wafers manufactured at Takata's
> Moses Lake, Washington plant during the period from April 13,
> 2000 (start of production) through September 11, 2002 . . . and certain
> airbag inflators manufactured at Takata's Monclova, Mexico plant
> during the period from October 4, 2001 (start of production) through
> October 31, 2002 . . . .

109.     It wasn't until their April 2013 Report that the Takata Defendants finally

admitted that their affected inflators were installed as original equipment in vehicles

manufactured by car manufacturers other than Honda, including Toyota, Nissan, Mazda, and

BMW.

110.     The Takata Defendants asserted that they did not know how many inflators were

installed in vehicles, as they did not have those records. Even though they did not have the

information to estimate the number of vehicles affected, the Takata Defendants still insisted

that the total number of installed inflators would be extremely low.

111.     The Takata Defendants described the defect as follows:

> Some propellant wafers produced at Takata's plant in Moses Lake,
> Washington, between April 13, 2000 and September 11, 2002 may
> have been produced with an inadequate compaction force. . . . In
> addition some propellant wafers used in inflators produced at
> Takata's plant in Monclova, Mexico between October 4, 2001 and
> October 31, 2002, may have been exposed to uncontrolled moisture
> conditions. These wafers could have absorbed moisture beyond the
> allowable limits . . . . In both cases propellant could potentially
> deteriorate over time due to environmental factors, which could lead
> to over aggressive combustion in the event of an airbag deployment.

*Cohen Milstein Sellers & Toll, PLLC*
*2925 PGA Boulevard, Suite 200, Palm Beach Gardens, FL 33410*
*Telephone: (561) 515-1400  Facsimile (561) 515-1401*

This could create excessive internal pressure within the inflator and the body of the inflator could rupture.

112.    In 2013, the Center for Auto Safety requested that NHTSA seek civil penalties from the Honda Defendants and stated that "Honda's submissions to NHTSA fail to disclose what it knew and when in dragging out the recall of over three million vehicles through five recalls over three years."

113.    On or about May 20, 2014, at NHTSA's Office of Defect Investigation's request, Takata Defendants' officials met with NHTSA to provide more information about the inflator ruptures not covered by previous recalls.

114.    On or about June 5, 2014, the Takata Defendants and ODI had a conference call in which ODI officials requested the Takata Defendants to support field actions by manufacturers to replace potentially suspect inflators in vehicles originally sold in or currently registered in Florida and Puerto Rico, and other states with similarly high levels of absolute humidity.

115.    On or about June 19, 2014, four days after Plaintiff Mincey was rendered a quadriplegic by the subject defect, the Honda Defendants launched three more inflator recalls for the subject defect: Recalls 14V349; 14V351; and 14V359, under the guise of a Safety Improvement Campaign.

116.    In that campaign notice, the Defendants noted that the VIN range supplied by the Takata Defendants might not have covered all affected vehicles. It also noted reports of "energetic" airbag deployments in vehicles in Florida and California. The Honda Defendants

described the defect as "the driver's side (frontal) airbag inflator ... could produce excessive internal pressure."

117.     Recall 14V351 included the subject motor vehicle. In that campaign notice, the Honda Defendants stated that "[c]ertain Honda and Acura vehicles in areas that are known for high absolute humidity may contain a driver's (frontal) airbag inflator that could produce excessive internal pressure" and defined those areas to include Puerto Rico and Florida.

118.     Plaintiff's vehicle was subject to recall under 14V351, but not repaired because her crash preceded the recall by four days.

119.     On or about October 22, 2014, the NHTSA expanded the list of vehicles affected by the recall of defective Takata components to cover ten automakers and numerous car models, totaling nearly 8 million vehicles.   Those automakers are BMW (627,615 potentially affected vehicles), Chrysler (371,309 potentially affected vehicles), Ford (58,669 potentially affected vehicles), General Motors (undetermined number of potentially affected vehicles), Honda (5,051,364 potentially affected vehicles), Mazda (64,872 potentially affected vehicles), Mitsubishi (11,985 potentially affected vehicles), Nissan (694,626 potentially affected vehicles), Subaru (17,516 potentially affected vehicles) and Toyota (877,000 potentially affected vehicles).

120.     Over the past 13 years that the Takata and/or Honda Defendants have known there was a problem with the safety of their airbags, there have been at least seven deaths and hundreds of injuries linked to defective Takata airbags.

Mincey v. Honda
Case No.: 15CA000377 Div CV-E
Amended Complaint
Page 34

121.     On or about June 1, 2015, Honda issued recall 15V320, which superseded recalls 08V593, 09V259, 10V041, 11V260, 14V351 and 15V153. This recall not only expanded the scope of the recall for the subject defect, it specified, "Vehicles that have had their driver side frontal air bag replaced previously as part of a recall remedy prior to September 12, 2014 need to have their air bag replaced under this recall as well."

**C. The Consent Orders**

122.     On December 29, 2014, NHTSA and the Honda Defendants entered into a Consent Order in the United States Department of Transportation National Highway Traffic Safety Administration matter *In re: Honda Tread Violations*, AQ14-0004 (hereinafter referred to as the "Honda Consent Order").

123.     The Honda Consent Order, in pertinent part, states that:

a.  Honda violated the TREAD ACT reporting requirements by failing to submit all early warning information as required in 49 C.F.R. § 579.21.

b.  Honda failed to report certain death and injury incidents that were required to be reported to NHTSA under 49 C.F.R. § 579.21(b).

c.  Honda failed to duly report customer satisfaction campaigns, special warranty extensions, and warranty claims that involved good will, third-party vehicle service contracts, or Honda-certified, pre-owned vehicles, as required by NHTSA's EWR regulations. *See* 49 C.F.R. § 579.21(c). These violations date back to the inception of the EWR reporting requirements in 2003.

d. Honda admits that it violated 49 C.P.R. Part 579, Subpart C by failing to submit early warning reports that comply with the requirements of 49 C.F.R. § 579.21(b).

e. Honda further admits that it violated 49 C.F.R. Part 579, Subpart C by failing to submit early warning reports that comply with the requirements of 49 C.F.R. § 579.21(c).

f. Honda admits that it failed to report customer satisfaction campaigns, special warranty extensions, and warranty claims that involved good will, third-party vehicle service contracts, and Honda-certified pre-owned vehicles.

g. Honda acknowledges that it has systematically failed to report events that are required to be submitted under 49 C.F.R. § 579.21(c) by impermissibly excluding reportable events that involved good will, third-party vehicle service contracts, and Honda-certified pre-owned vehicles.

124.    The Honda Consent Order was signed by Richard Schostek, Executive Vice President of Honda North America, Inc.

125.    On May 18, 2015, NHTSA and the Takata Defendants entered into a Consent Order in the United States Department of Transportation National Highway Traffic Safety Administration matter *Air Bag Inflator Rupture*, EA15-001 (hereinafter referred to as the "Takata Consent Order").

126.     The Takata Consent Order, in pertinent part, states that "a defect related to motor vehicle safety may arise in some of the air bag inflators that Takata manufactured for certain vehicles sold or registered in the United States." It continues:

> "The propellant wafers in some of the subject inflators may experience an alteration over time, which could potentially lead to overaggressive combustion in the event of an air bag deployment. Depending on the circumstances, this potential condition could create excessive internal pressure when the air bag is deployed, which could result in the body of the inflator rupturing upon deployment. Based upon Takata's investigation to date, the potential for such ruptures may occur in some of the subject inflators after several years of exposure to persistent conditions of high absolute humidity. In addition, Takata's test results and investigation indicate that this potential for rupturing may also depend on other factors, including vehicle design factors and manufacturing variability. . . ."

(Quoting Takata's Defect Information Reports, which are Exhibit A to the Takata Consent Order).

127.     The Takata Consent Order was signed by Shunkichi Shimizu, President of TK Holdings, Inc.

### D. The Tolling Period

128.     As early as 2001, if not earlier, the Takata Defendants were aware of and had actual knowledge of the subject defect, but concealed that defect until June 19, 2014. Therefore, the statute of repose has been tolled for at least 13 years.

129.     As early as 2004, if not earlier, the Honda Defendants were aware of and had actual knowledge of the subject defect, but concealed that defect until June 19, 2014. Therefore, the statute of repose has been tolled for at least 10 years.

Mincey v. Honda
Case No.: 15CA000377 Div CV-E
Amended Complaint
Page 37

130.    In the alternative, as early as November 11, 2008, if not earlier, the Honda and Takata Defendants were aware of and had actual knowledge of the subject defect, but concealed that defect until June 19, 2014. Therefore, the statute of repose has been tolled for at least 6 years.

131.    In the alternative, as early as October 2011, if not earlier, the Honda and Takata Defendants were aware of and had actual knowledge of the subject defect, but concealed that defect until June 19, 2014. Therefore, the statute of repose has been tolled for at least 3 years.

## COUNT I
## NEGLIGENCE AGAINST THE HONDA DEFENDANTS

132.    Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1 - 131 above.

133.    The Honda Defendants owed a duty of reasonable care in the design, development, testing, manufacture, assembly, marketing, and distribution of the subject vehicle and its safety systems so as to avoid exposing Plaintiff to unnecessary and unreasonable risks.

134.    The Honda Defendants breached that duty in one or more of the following ways:

   a. By negligently failing to use due care in the manufacture, distribution, design, sale, testing, and servicing of the subject vehicle and its component parts in order to avoid the aforementioned risks to individuals;

   b. By negligently failing to provide adequate warnings against late airbag deployment due to inadequate sensor location and its propensity to cause and/or contribute to injuries;

Cohen Milstein Sellers & Toll, PLLC
2925 PGA Boulevard, Suite 200, Palm Beach Gardens, FL 33410
Telephone: (561) 515-1400   Facsimile (561) 515-1401

c.  By negligently failing to incorporate within the subject vehicle and its design reasonable safeguards and protections against late airbag deployment due to inadequate sensor location and the consequences thereof;

d.  By negligently failing to make timely correction to the design of the subject vehicle to correct the airbag defects, including the failure to install the sensors in the proper locations;

e.  By negligently failing to adequately identify and mitigate the hazards associated with late airbag deployment and inadequate locations of sensors in accordance with good engineering practices;

f.  By negligently failing to provide adequate warnings of airbag excessive pressurization and excessive deployment forces;

g.  By negligently failing to incorporate within the subject vehicle and its design reasonable safeguards and protections against airbag excessive pressurization and excessive deployment forces and the consequences thereof;

h.  By negligently failing to make timely correction to the design of the subject vehicle airbag to correct excessive pressurization and excessive deployment forces;

i.  By negligently failing to adequately identify and mitigate the hazards associated with airbag excessive pressurization and excessive deployment forces in accordance with good engineering practices;

j. By negligently failing to adequately test the subject vehicle to ensure it provided foreseeable occupants with reasonable safety in foreseeable impacts;

k. By negligently designing the vehicle from an occupant protection/crashworthiness standpoint;

l. By failing to adequately warn foreseeable users of the unreasonably dangerous and defective condition(s) of the vehicle despite that the Honda Defendants knew or should have known the unreasonably dangerous condition(s);

m. By failing to disclose known problems and defects;

n. By marketing the vehicle as a safe passenger vehicle and reasonably safe in a crash;

o. By negligently designing the vehicle from a marketing standpoint in that the vehicle was marketed as reasonably safe for the uses for which the Honda Defendants represented it publicly;

p. By failing to meet or exceed internal corporate guidelines;

q. By failing to meet or reasonably exceed minimum Federal Motor Vehicle Safety Standards despite knowledge of the inadequacy of such standards;

r. By failing to notify consumers, as required by law, that a defect exists in the vehicle that relates to public safety;

s. By failing to recall the vehicle or alternatively retrofitting the vehicle to enhance safety;

Mincey v. Honda
Case No.: 15CA000377 Div CV-E
Amended Complaint
Page 40

t.   By failing to provide adequate warning and/or instructions to foreseeable users of the unreasonable, dangerous and defective condition of the vehicle despite that they knew or should have known of the unreasonably dangerous conditions; and

u.   By failing to inform the consumer, including Plaintiff Mincey, that the Honda Defendants knew about the airbags and occupant protection risks in the subject vehicle, thus depriving consumers, including Plaintiff Mincey, of the right to make a conscious or free choice in light of the known risks of operating the subject vehicle.

135.   As a direct and proximate result of the aforementioned negligence of the Honda Defendants, Plaintiff suffered permanent, catastrophic bodily injuries, including spine and spinal cord injuries resulting in Plaintiff becoming quadriplegic, and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, the expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money, and aggravation of a previously existing condition, if any.   The losses are either permanent or continuing and Plaintiff will suffer the losses in the future.

WHEREFORE, Plaintiff, Patricia Mincey, by and through her attorney-in-fact, Kelly Sims, demands judgment for compensatory damages, including interest on all liquidated damages, attorneys' fees pursuant to any applicable offer of judgment statute and/or rule, and taxable costs against the Honda Defendants, and further demands trial by jury of all issues so triable as a matter of right by jury.

## COUNT II
## STRICT LIABILITY AGAINST THE HONDA DEFENDANTS

136.    Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1 – 131 above.

137.    At all material times, the Honda Defendants designed, developed, manufactured, marketed, assembled, tested, distributed, sold and placed into the stream of commerce the subject vehicle and its safety systems. At all material times, the Takata Defendants designed, developed, manufactured, marketed, assembled, tested, distributed, and sold the defective airbag safety system incorporated into Honda vehicles as a component part.

138.    At all material times, the subject vehicle was unreasonably dangerous and defective because:

  a.    The Takata and/or Honda Defendants failed to use due care in the manufacture, distribution, design, sale, testing, and servicing of the subject vehicle and its component parts in order to avoid the aforementioned risks to an individual;

  b.    The Takata and/or Honda Defendants failed to provide adequate warnings against late airbag deployment due to inadequate sensor location and its propensity to cause and/or contribute to injuries;

  c.    The Takata and/or Honda Defendants failed to incorporate within the subject vehicle and its design reasonable safeguards and protections against late airbag deployment due to inadequate sensor location and the consequences thereof;

d. The Takata and/or Honda Defendants failed to make timely correction to the design of the subject vehicle to correct the airbag defects, including the failure to install the sensors in the proper locations;

e. The Takata and/or Honda Defendants failed to adequately identify and mitigate the hazards associated with late airbag deployment and inadequate locations of sensors in accordance with good engineering practices;

f. The Takata and/or Honda Defendants failed to provide adequate warnings of airbag excessive pressurization and excessive deployment forces;

g. The Takata and/or Honda Defendants failed to incorporate within the subject vehicle and its design reasonable safeguards and protections against airbag excessive pressurization and excessive deployment forces and the consequences thereof;

h. The Takata and/or Honda Defendants failed to make timely correction to the design of the subject vehicle airbag to correct excessive pressurization and excessive deployment forces;

i. The Takata and/or Honda Defendants failed to adequately identify and mitigate the hazards associated with airbag excessive pressurization and excessive deployment forces in accordance with good engineering practices;

j. The Honda Defendants failed to adequately test the subject vehicle to ensure it provided foreseeable occupants with reasonable safety in foreseeable impacts;

k. By failing to adequately design the vehicle from an occupant protection/crashworthiness standpoint;

l. By failing to adequately warn foreseeable users of the unreasonably dangerous and defective condition(s) of the vehicle despite that the Honda Defendants knew or should have known the unreasonably dangerous condition(s);

m. By failing to disclose known problems and defects;

n. By marketing the vehicle as a safe passenger vehicle and reasonably safe in a crash;

o. By designing the vehicle from a marketing standpoint in that the vehicle was marketed as reasonably safe for the uses for which the Honda defendants represented it publicly;

p. By failing to meet or exceed internal corporate guidelines;

q. By failing to meet or reasonably exceed minimum Federal Motor Vehicle Safety Standards despite knowledge of the inadequacy of such standards;

r. By failing to notify consumers, as required by law, that a defect exists in the vehicle that relates to public safety;

s. By failing to recall the vehicle or alternatively retrofitting the vehicle to enhance safety;

t. By failing to provide adequate warning and/or instructions to foreseeable users of the unreasonable, dangerous and defective condition of the vehicle despite that it knew or should have known the unreasonably dangerous conditions; and

u. By failing to inform the consumer, including Plaintiff Mincey, that the Honda Defendants knew about the airbags and occupant protection risks in the subject vehicle, thus depriving Plaintiff Mincey of the right to make a conscious or free choice in light of the known risks of operating the subject vehicle.

139.    These unreasonably dangerous defects were present in the vehicle when it was placed into the stream of commerce by the Honda Defendants and the vehicle did not undergo material change or alteration up to and including the time of the aforementioned crash.

140.    As a direct and proximate result of the aforementioned defects, Plaintiff suffered permanent, catastrophic bodily injuries, including spine and spinal cord injuries, resulting in Plaintiff becoming quadriplegic, and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, the expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money, and aggravation of a previously existing condition, if any.   The losses are either permanent or continuing and Plaintiff will suffer the losses in the future.

WHEREFORE, Plaintiff, Patricia Mincey, by and through her attorney-in-fact, Kelly Sims, demands judgment for compensatory damages, including interest on all liquidated damages, attorneys' fees pursuant to any applicable offer of judgment statute and/or rule, and taxable costs against the Honda Defendants, and further demands trial by jury of all issues so triable as a matter of right by jury.

## COUNT III
## FRAUDULENT CONCEALMENT AGAINST THE HONDA DEFENDANTS

141.     Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1 – 131 above.

142.     The Honda Defendants, through its employees, agents, and/or servants, who were acting within the course and scope of their employment, made false statements, misrepresentations of material fact, and/or concealed and/or suppressed the truth of the cause, magnitude, and gravity of the subject defect as stated with specificity above.

143.     At the time the acts were made by the Honda Defendants, through its employees, agents, and/or servants, while acting within the course and scope of their employment, those individuals knowingly made the misrepresentations and/or concealed and/or suppressed the truth.

144.     At the time the acts were made by the Honda Defendants, through its employees, agents, and/or servants, while acting within the course and scope of their employment, those individuals should have known that its misrepresentations were false and/or concealed and/or suppressed the truth.

145.     The Honda Defendants intended that individuals, such as Plaintiff Mincey, would be induced by their false statements, misrepresentations of material fact, and/or concealment and/or suppression the truth of the cause, magnitude, and gravity of the subject defect as follows:

   a.  To induce individuals, including Plaintiff, to continue to operate their motor vehicles under the false belief that their motor vehicles were safe and did not suffer from the subject defect; and/or

*Cohen Milstein Sellers & Toll, PLLC*
*2925 PGA Boulevard, Suite 200, Palm Beach Gardens, FL 33410*
*Telephone: (561) 515-1400  Facsimile (561) 515-1401*

b. To induce individuals, including Plaintiff, to not seek repair and/or replacement parts for the subject defect in their motor vehicles at the expense of the Honda Defendants.

146.    Plaintiff Mincey was induced by the Honda Defendants and justifiably relied upon their misrepresentations in that she continued to operate her motor vehicle believing it was safe and did not suffer from the subject defect.

147.    Had Plaintiff Mincey known that the subject vehicle was not safe and/or suffered from the subject defect she would not have operated that vehicle and/or would have sought its repair and/or replacement.

148.    Relying on the Honda Defendants' false statements and/or material omissions, Plaintiff Mincey continued to operate the subject vehicle and was rendered a quadriplegic by the subject defect.

149.    As a direct and proximate result of the aforementioned fraud, Plaintiff suffered permanent, catastrophic bodily injuries, including spine and spinal cord injuries, resulting in Plaintiff becoming quadriplegic, and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, the expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money, and aggravation of a previously existing condition, if any. The losses are either permanent or continuing and Plaintiff will suffer the losses in the future.

WHEREFORE, Plaintiff, Patricia Mincey, by and through her attorney-in-fact, Kelly Sims, demands judgment for compensatory damages, including interest on all liquidated damages,

attorneys' fees pursuant to any applicable offer of judgment statute and/or rule, and taxable costs against the Honda Defendants, and further demands trial by jury of all issues so triable as a matter of right by jury.

## COUNT IV
## NEGLIGENCE AGAINST THE TAKATA DEFENDANTS

150.      Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1 – 131 above.

151.      The Takata Defendants owed a duty of reasonable care in the design, development, testing, manufacture, assembly, marketing, and distribution of the subject vehicle's airbag safety system so as to avoid exposing Plaintiff to unnecessary and unreasonable risks.

152.      The Takata Defendants breached that duty in one or more of the following ways:

a.  By negligently failing to use due care in the manufacture, distribution, design, sale, testing, and servicing of the subject airbags and their component parts in order to avoid the aforementioned risks to individuals;

b.  By negligently failing to provide adequate warnings against late airbag deployment due to inadequate sensor location and its propensity to cause and/or contribute to injuries;

c.  By negligently failing to incorporate within the subject vehicle and its design reasonable safeguards and protections against late airbag deployment due to inadequate sensor location and the consequences thereof;

*Cohen Milstein Sellers & Toll, PLLC*
*2925 PGA Boulevard, Suite 200, Palm Beach Gardens, FL 33410*
*Telephone: (561) 515-1400  Facsimile (561) 515-1401*

d.  By negligently failing to make timely correction to the design of the subject vehicle to correct the airbag defects, including the failure to install the sensors in the proper locations;

e.  By negligently failing to adequately identify and mitigate the hazards associated with late airbag deployment and inadequate locations of sensors in accordance with good engineering practices;

f.  By negligently failing to provide adequate warnings of airbag excessive pressurization and excessive deployment forces;

g.  By negligently failing to incorporate within the subject vehicle and its airbag design reasonable safeguards and protections against airbag excessive pressurization and excessive deployment forces and the consequences thereof;

h.  By negligently failing to make timely correction to the design of the airbag to correct excessive pressurization and excessive deployment forces;

i.  By negligently failing to adequately identify and mitigate the hazards associated with airbag excessive pressurization and excessive deployment forces in accordance with good engineering practices;

j.  By negligently failing to adequately test the subject airbag to ensure it provided foreseeable occupants with reasonable safety in foreseeable impacts;

k.  By negligently designing the vehicle airbag from an occupant protection/crashworthiness standpoint;

l.  By failing to adequately warn foreseeable users of the unreasonably dangerous and defective condition(s) of the vehicle airbag despite that the Takata Defendants knew or should have known the unreasonably dangerous condition(s);

m.  By failing to disclose known airbag problems and defects;

n.  By marketing the airbag as reasonably safe in a crash;

o.  By negligently designing the airbag from a marketing standpoint in that the airbag was marketed as reasonably safe for the uses for which the Takata Defendants represented it publicly;

p.  By failing to meet or exceed internal corporate guidelines;

q.  By failing to meet or reasonably exceed minimum Federal Motor Vehicle Safety Standards despite knowledge of the inadequacy of such standards;

r.  By failing to notify consumers, as required by law, that a defect exists in the airbag that relates to public safety;

s.  By failing to recall the airbag or alternatively retrofitting the airbag to enhance safety;

t.  By failing to provide adequate warning and/or instructions to foreseeable users of the unreasonable, dangerous and defective condition of the airbag despite that it knew or should have known the unreasonably dangerous conditions; and

u.  By failing to inform the consumer, including Plaintiff Mincey, that the Takata Defendants knew about the airbags and occupant protection risks in the subject

vehicle, thus depriving Plaintiff Mincey of the right to make a conscious or free choice in light of the known risks of operating the subject vehicle.

153.     As a direct and proximate result of the aforementioned negligence of the Takata Defendants, Plaintiff suffered permanent, catastrophic bodily injuries, including spine and spinal cord injuries resulting in Plaintiff becoming quadriplegic, and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, the expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money, and aggravation of a previously existing condition, if any.   The losses are either permanent or continuing and Plaintiff will suffer the losses in the future.

WHEREFORE, Plaintiff, Patricia Mincey, by and through her attorney-in-fact, Kelly Sims, demands judgment for compensatory damages, including interest on all liquidated damages, attorneys' fees pursuant to any applicable offer of judgment statute and/or rule, and taxable costs against the Takata Defendants, and further demands trial by jury of all issues so triable as a matter of right by jury.

## COUNT V
## STRICT LIABILITY AGAINST THE TAKATA DEFENDANTS

154.     Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1- 131 above.

155.     At all material times, the Takata Defendants designed, developed, manufactured, marketed, assembled, tested, distributed, sold and placed into the stream of commerce the subject vehicle's airbag safety system.

156.    At all material times, the subject vehicle was unreasonably dangerous and defective because:

    a. The Takata Defendants failed to use due care in the manufacture, distribution, design, sale, testing, and servicing of the subject airbag and its component parts in order to avoid the aforementioned risks to an individual;

    b. The Takata Defendants failed to provide adequate warnings against late airbag deployment due to inadequate sensor location and its propensity to cause and/or contribute to injuries;

    c. The Takata Defendants failed to incorporate within the subject vehicle and its design reasonable safeguards and protections against late airbag deployment due to inadequate sensor location and the consequences thereof;

    d. The Takata Defendants failed to make timely correction to the design of the subject vehicle to correct the airbag defects, including the failure to install the sensors in the proper locations;

    e. The Takata Defendants failed to adequately identify and mitigate the hazards associated with late airbag deployment and inadequate locations of sensors in accordance with good engineering practices;

    f. The Takata Defendants failed to provide adequate warnings of airbag excessive pressurization and excessive deployment forces;

g. The Takata Defendants failed to incorporate within the subject vehicle and its airbag design reasonable safeguards and protections against airbag excessive pressurization and excessive deployment forces and the consequences thereof;

h. The Takata Defendants failed to make timely correction to the airbag design or to correct excessive pressurization and excessive deployment forces;

i. The Takata Defendants failed to adequately identify and mitigate the hazards associated with airbag excessive pressurization and excessive deployment forces in accordance with good engineering practices;

j. The Takata Defendants failed to adequately test the subject airbag to ensure it provided foreseeable occupants with reasonable safety in foreseeable impacts;

k. By failing to adequately design the airbag from an occupant protection/crashworthiness standpoint;

l. By failing to adequately warn foreseeable users of the unreasonably dangerous and defective condition(s) of the airbag despite that the Takata Defendants knew or should have known the unreasonably dangerous condition(s);

m. By failing to disclose known problems and defects;

n. By marketing the reasonably safe airbag in a crash;

o. By designing the airbag from a marketing standpoint in that the airbag was marketed as reasonably safe for the uses for which the Takata Defendants represented it publicly;

p. By failing to meet or exceed internal corporate guidelines;

q. By failing to meet or reasonably exceed minimum Federal Motor Vehicle Safety Standards despite knowledge of the inadequacy of such standards;

r. By failing to notify consumers, as required by law, that a defect exists in the vehicle that relates to public safety;

s. By failing to recall the vehicle or alternatively retrofitting the vehicle to enhance safety;

t. By failing to provide adequate warning and/or instructions to foreseeable users of the unreasonable, dangerous and defective condition of the airbag despite that it knew or should have known of the unreasonably dangerous conditions; and

u. By failing to inform the consumer, including Plaintiff Mincey, that Takata Defendants knew about the airbags and occupant protection risks in the subject vehicle, thus depriving Plaintiff Mincey of the right to make a conscious or free choice in light of the known risks of operating the subject vehicle.

157.    These unreasonably dangerous defects were present in the airbag safety system when it was placed into the stream of commerce by the Takata Defendants and the airbag assembly did not undergo material change or alteration up to and including the time of the aforementioned crash.

158.    As a direct and proximate result of the aforementioned defects, Plaintiff suffered permanent, catastrophic bodily injuries, including spine and spinal cord injuries, resulting in Plaintiff becoming quadriplegic, and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, the expense of hospitalization, medical

Mincey v. Honda
Case No.: 15CA000377 Div CV-E
Amended Complaint
Page 54

and nursing care and treatment, loss of earnings, loss of ability to earn money, and aggravation of a previously existing condition, if any.  The losses are either permanent or continuing and Plaintiff will suffer the losses in the future.

WHEREFORE, Plaintiff, Patricia Mincey, by and through her attorney-in-fact, Kelly Sims, demands judgment for compensatory damages, including interest on all liquidated damages, attorneys' fees pursuant to any applicable offer of judgment statute and/or rule, and taxable costs against the Takata Defendants, and further demands trial by jury of all issues so triable as a matter of right by jury.

## COUNT VI
## FRAUDULENT CONCEALMENT AGAINST THE TAKATA DEFENDANTS

159.    Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1 – 131 above.

160.    The Takata Defendants, through its employees, agents, and/or servants, who were acting within the course and scope of their employment, made false statements, misrepresentations of material fact, and/or concealed and/or suppressed the truth of the cause, magnitude, and gravity of the subject defect as stated with specificity above.

161.    At the time the acts were made by the Takata Defendants, through its employees, agents, and/or servants, while acting within the course and scope of their employment, those individuals knowingly made the misrepresentations and/or concealed and/or suppressed the truth.

162.    At the time the acts were made by the Takata Defendants, through its employees, agents, and/or servants, while acting within the course and scope of their employment, those

Cohen Milstein Sellers & Toll, PLLC
2925 PGA Boulevard, Suite 200, Palm Beach Gardens, FL 33410
Telephone: (561) 515-1400  Facsimile (561) 515-1401

Mincey v. Honda
Case No.: 15CA000377 Div CV-E
Amended Complaint
Page 55

individuals should have known that its misrepresentations were false and/or concealed and/or suppressed the truth.

163.    The Takata Defendants intended that individuals, such as Plaintiff, Patricia Mincey, would be induced by its false statements, misrepresentations of material fact, and/or concealment and/or suppression the truth of the cause, magnitude, and gravity of the subject defect as follows:

a.   To induce individuals, including Plaintiff, to continue to operate their motor vehicles airbags under the false belief that their airbags were safe and did not suffer from the subject defect; and/or

b.   To induce individuals, including Plaintiff, to not seek repair and/or replacement parts for the subject defect in their motor vehicles airbags at the expense of the Takata Defendants.

164.    Plaintiff Patricia Mincey was induced by the Takata Defendants and justifiably relied upon its misrepresentations in that she continued to operate her motor vehicle believing it was safe and did not suffer from the subject defect.

165.    Had Plaintiff Patricia Mincey known that the subject vehicle airbag was not safe and/or suffered from the subject defect she would not have operated that vehicle and/or would have sought its repair and/or replacement.

166.    Relying on the Takata Defendants false statements and/or material omissions Plaintiff Patricia Mincey continued to operate the subject vehicle and was rendered a quadriplegic by the subject defect.

*Cohen Milstein Sellers & Toll, PLLC*
*2925 PGA Boulevard, Suite 200, Palm Beach Gardens, FL 33410*
*Telephone: (561) 515-1400  Facsimile (561) 515-1401*

167.     As a direct and proximate result of the aforementioned fraud, Plaintiff suffered permanent, catastrophic bodily injuries, including spine and spinal cord injuries, resulting in Plaintiff becoming quadriplegic, and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, the expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money, and aggravation of a previously existing condition, if any.  The losses are either permanent or continuing and Plaintiff will suffer the losses in the future.

WHEREFORE, Plaintiff, Patricia Mincey, by and through her attorney-in-fact, Kelly Sims, demands judgment for compensatory damages, including interest on all liquidated damages, attorneys' fees pursuant to any applicable offer of judgment statute and/or rule, and taxable costs against the Takata Defendants, and further demands trial by jury of all issues so triable as a matter of right by jury.

## COUNT VII
## NEGLIGENCE AGAINST DUVAL MOTORS OF JACKSONVILLE, LLC

168.     Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1- 131 above.

169.     At all times material hereto, Defendant Duval Motors was an authorized Honda dealer. As such, it received notice of all Honda recalls and service bulletins.

170.     On or about September 17, 2009, Defendant Duval Motors replaced the driver's side airbag inflator in the subject vehicle because it had been recalled.

171.     On or about May 17, 2011, Defendant Duval Motors received a service bulletin from Honda notifying it that a "manufacturing error can produce over-pressurization of some

replacement driver's (front) airbag inflators during airbag deployment." Pursuant to that bulletin, Defendant Duval Motors Honda was required to inspect vehicles falling within a certain model and VIN number range to determine if the vehicle had received a defective replacement airbag inflator, in which case it was required to install a new driver's airbag inflator kit and return the removed inflator to Honda within 48 hours of the repair.

172.     On or about July 18, 2011, Defendant Duval Motors received an update to the May 2011 service bulletin instructing it that it "MUST" follow certain procedures "when a suspect vehicle arrives at [its] dealership," including checking the vehicle's VIN number to determine whether it fell within the range specified in the May 2011 service bulletin, inspecting the identified vehicles, and replacing driver's airbag inflators that it identified as defective during its inspection.

173.     On or about July 29, 2011, Defendant Duval Motors performed repairs and maintenance on the subject vehicle, which fell within the range of models and VIN numbers specified in the May 2011 bulletin and July 2011 notice. Despite the instructions in the May 2011 service bulletin and July 2011 notice, Defendant Duval Motors failed to inspect the subject vehicle for a defective driver's airbag inflator and/or failed to identify that the subject vehicle contained a defective driver's airbag inflator.

174.     On or about August 22, 2013, Defendant Duval Motors performed repairs and maintenance on the subject vehicle, including replacing the passenger airbag inflator. Despite the instructions in the May 2011 service bulletin and July 2011 notice, Defendant Duval Motors

Mincey v. Honda
Case No.: 15CA000377 Div CV-E
Amended Complaint
Page 58

failed to inspect the subject vehicle for a defective driver's airbag inflator and/or failed to identify that the subject vehicle contained a defective driver's airbag inflator.

175.    Defendant Duval Motors had a duty to perform repairs on the subject vehicle, including repairs on its airbag system, with reasonable care.

176.    Defendant Duval Motors had a duty to inspect the subject vehicle in such a manner and with the exercise of reasonable care so as to recognize that the subject vehicle's airbag was defective and/or subject to recall.

177.    Defendant Duval Motors had a duty to warn consumers or intended users, including Plaintiff Mincey, of the subject defect, which it knew of or should have known of in the exercise of ordinary care and by virtue of its position as an authorized Honda dealer who was notified by Honda of the subject defect and the multiple repeated and expanded recalls due to the subject defect, and which rendered the subject vehicle unreasonably dangerous to use.

178.    The subject defect was patent, not latent, as demonstrated by Honda's instructions to its dealers, including Defendant Duval Motors, explaining how to identify and replace defective driver's airbag inflators and by the multiple repeated and expanded recalls due to the subject defect.

179.    Defendant Duval Motors breached its duty to act with reasonable care in one or more of the following ways:

    a.  By failing to properly repair the subject vehicle's airbag system by replacing the defective driver's airbag inflator;

    b.  By failing to properly inspect the subject vehicle in order to identify that it contained a defective driver's airbag inflator;

    c.  By failing to warn Plaintiff Mincey of the subject defect, which it knew of or should have known of in the exercise of ordinary care and by virtue of its specific knowledge of the defect, and which rendered the subject vehicle unreasonably dangerous to use; or

    d.  By failing to properly replace the subject vehicle's driver's airbag inflator and/or to warn Plaintiff Mincey that the driver's airbag inflator was subject to recall or might suffer from the same defect as the driver's airbag inflators that had been subject to recall.

180.    Plaintiff did not know, and could not reasonably have known, that Defendant Duval Motors breached these duties until the airbag system in the subject vehicle failed to properly perform during the accident at issue in this litigation.

181.    As a direct and proximate result of the aforementioned negligence of Defendant Duval Motors, Plaintiff suffered permanent, catastrophic bodily injuries, including spine and spinal cord injuries resulting in Plaintiff becoming quadriplegic, and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, the expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money, and aggravation of a previously existing condition, if any.   The losses are either permanent or continuing and Plaintiff will suffer the losses in the future.

*Cohen Milstein Sellers & Toll, PLLC*
*2925 PGA Boulevard, Suite 200, Palm Beach Gardens, FL 33410*
*Telephone: (561) 515-1400   Facsimile (561) 515-1401*

WHEREFORE, Plaintiff, Patricia Mincey, by and through her attorney-in-fact, Kelly Sims,

demands judgment for compensatory damages, including interest on all liquidated damages,

attorneys' fees pursuant to any applicable offer of judgment statute and/or rule, and taxable costs

against the Defendant Duval Motors, and further demands trial by jury of all issues so triable as a

matter of right by jury.

## DEMAND FOR JURY TRIAL

Plaintiff Patricia Mincey demands a jury trial on all issues so triable as a matter of right.

Respectfully submitted,

_s/ Theodore J. Leopold_
THEODORE J. LEOPOLD, ESQ.
Florida Bar No.: 705608
tleopold@cohenmilstein.com
DIANA L. MARTIN, ESQ.
Florida Bar No.: 624489
dmartin@cohenmilstein.com
**Cohen Milstein Sellers & Toll, PLLC**
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of June, 2015, I electronically filed a true and correct copy of the foregoing via the Florida Courts E-Filing Portal with the Clerk of the Court and served upon those listed below via the Florida Courts E-Filing Portal:

| | |
|---|---|
| Joel H. Smith, Esq. | Daniel Kissane, Esq. |
| Joel.Smith@bowmanandbrooke.com | daniel.kissane@csklegal.com; |
| Bowman and Brooke, LLP | Pauletta.Hembling@csklegal.com; |
| 1441 Main Street, Suite 1200 | theresa.tippins@csklegal.com; |
| Columbia, SC 29201 | rachel.chewning@csklegal.com |
| Phone: (803)-726-7420 | Cole, Scott & Kissane |
| Attorneys for American Honda Motor Co., Inc. | 4686 Sunbeam Road |
| | Jacksonville, FL 32257 |

*Cohen Milstein Sellers & Toll, PLLC*
*2925 PGA Boulevard, Suite 200, Palm Beach Gardens, FL 33410*
*Telephone: (561) 515-1400  Facsimile: (561) 515-1401*





Mincey v. Honda
Case No.: 15CA000377 Div CV-E
Amended Complaint
Page 61

Phone: (904)-672-4000
Attorneys for American Honda Motor Co.,
Inc. & Honda of America Mfg

Benjamin R. Barnett, Esq.
ben.barnett@dechert.com
Dechert LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104-2808
Phone: (215)-994-4000
Attorneys for TK Holdings

John M. Howell, Esq.
jhowell@ohnjax.com
O'Neal & Howell, P.A.
2700 University Blvd, W., Suite C
Jacksonville, FL 32217
Phone: (904)-353-0024
Fax: (904)-353-0061
Attorneys for Duval Motors

Lena Mirilovic, Esq.
lmirilovic@rumberger.com;
lmiriloviesecy@rumberger.com
Michael D. Begey, Esq.
mbegey@rumberger.com;
mbegey@rumberger.com;
docketingorlando@rumberger.com;
mbegeysecy@rumberger.com
W.L. Kirk, Jr., Esq.
bkirk@rumberger.com;
docketingorlando@rumberger.com;
bkirksecy@rumberger.com
Rumberger Kirk & Caldwell
300 S. Orange Ave., Suite 1400
Orlando, FL 32801
Phone: (407)-872-7300
Fax: (407)-841-2133
Attorneys for Takata Corporation & TK
Holdings

Cohen Milstein Sellers & Toll, PLLC
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410
(561) 515-1400
(561) 515-1401 (facsimile)

By: _s/Diana L. Martin_____
    DIANA L. MARTIN, ESQ.
    Florida Bar No.: 624489
    dmartin@cohenmilstein.com

*Cohen Milstein Sellers & Toll, PLLC*
*2925 PGA Boulevard, Suite 200, Palm Beach Gardens, FL 33410*
*Telephone: (561) 515-1400  Facsimile (561) 515-1401*